UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-70-R

CENTURY SURETY COMPANY                                                                         PLAINTIFF

v.

KEN BAR, LLC..                                                                                         DEFENDANT

## AMENDED MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Century Surety Company's Renewed Motion for Summary Judgment (Docket #24). Defendant responded (Docket #27) and filed a Motion for Partial Summary Judgment (Docket #28). Plaintiff has replied (Docket #31). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Renewed Motion for Summary Judgment is GRANTED. Defendant's Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

This is an action for declaratory judgment. Plaintiff Century Insurance Company issued a commercial general liability policy, Policy No. 415427 ("Policy") to Defendant Ken Bar, Inc., with a policy period of March 30, 2006, to March 30, 2007. Plaintiff has filed this action requesting a judgment declaring that Plaintiff has no obligation under the Policy to defend or indemnify Defendant in Marshal Circuit Court Civil Action 06-CI-433 ("Underlying Action").

The Underlying Action relates to the death of Ashley Wilson. The estate of Ashley Wilson ("Estate"), the plaintiff in the Underlying Action, alleges that Mark Christy and Steven Howell raped and murdered Wilson at or around the Ken-Bar Lodge in Gilbertsville, Kentucky. The Estate alleges that Defendant is liable for (1) negligently hiring, retaining, or supervising its employees, (2) violating the Kentucky Civil Rights Act by permitting the sexual harassment of an employee,

and (3) punitive damages.

Plaintiff previously moved for summary judgment arguing that the death of Ashley Wilson was not an accident or occurrence under the Policy. The Court denied that particular basis for summary judgment. Plaintiff also cited several exclusions contained in the Policy, which Plaintiff argues entitles it to judgment as a matter of law based on the allegations of the Underlying Action. Based on the factual record before the Court at that time, the Court denied Plaintiff's motion. After additional discovery, Plaintiff has renewed its motion. In response, Defendant has requested partial summary judgment as to Plaintiff's duty to defend under the Policy.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the

mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. The exclusions were part of the Policy

Based on supplemented factual record, the Court now finds that Plaintiff is entitled to judgment as a matter of law. Defendant originally submitted the affidavit of Joe Dooley, a representative of Defendant. Dooley stated that he contacted AIA Insurance Company concerning a general liability coverage insurance policy. Dooley stated the he believed that AIA was Plaintiff's agent. At the time AIA agreed to provide the general liability coverage insurance policy, Dooley did not receive any exclusions to the general insurance coverage.

Plaintiff originally submitted the affidavit of Kristin Gatherum, Plaintiff's senior litigation counsel, which stated that AIA Insurance Company was not, and never has been Plaintiff's agent. Gatherum stated that AIA was Defendant's agent, and that AIA contacted Plaintiff's agent, Market Finders Insurance concerning a commercial general liability insurance policy for Defendant. Market Finders then sent a copy of the policy to AIA for delivery to Defendant, as is customary in the industry.

When the Court first considered Plaintiff's motion, the Court was faced with Defendant's denials that he had ever discussed any of the exclusions with AIA. Additionally, there was nothing on the record that would allow the Court to determine that Defendant had ever received a copy of the Policy, and if it had received a copy if the relevant exclusions were included in the copy. There

was no specific information concerning any discussions between AIA and Defendant that could have misled Defendant as to what risks are actually covered under the Policy.

Plaintiff has now supplemented Gatherum's affidavit with the deposition testimony of Ron Smith, AIA's general insurance agent. Plaintiff has also taken the deposition of Joe Dooley, which clarified his previously submitted affidavit.

Gatherum's affidavit states that in 2005 Market Finders, Plaintiff's agent, sent a copy of the 2005 commercial general liability policy to a AIA. Smith testified that he sent Defendant a copy of the 2005 general commercial liability policy to Defendant. Dooley testified that he does not remember when he received the Policy, but that it was probably a couple weeks after it was bound. He did testify later that it was possible he received it after the commencement of the underlying action. According to Gatherum, the 2005 policy contained the same exclusions as the Policy at issue in this action. According to Smith, the 2005 policy was sent with a cover letter instructing Defendant to carefully read the policy language, and to notify AIA if there are any changes or errors in the policy.

Dooley testified that he called Smith on the phone to request a renewal of the 2005 policy. Gatherum states that Market Finders sent AIA a copy of the Policy in early 2006. Smith testified that he sent a copy of the Policy to Defendant. Dooley testified that he is not sure if he received a copy of the renewed Policy in 2006.

Based on this evidence, the Court finds that the exclusions are part of the Policy purchased by Defendant. Defendant must provide more than a mere scintilla of evidence in support of his position that he purchased a policy with no exclusions. Dooley's lack of recollection as to when he received the copy of the 2005 and 2006 policy in his possession is insufficient to allow the trier of

4

fact to reasonably find that Defendant had purchased a commercial general liability policy that was free from any exclusions.

Although Smith testified that he did not have a transmittal form for the 2006 Policy, he did specifically testify that he mailed the Policy to Defendant. Nor does the fact that Smith mailed the 2005 and 2006 policies to different addresses create a dispute of material fact as to whether the Policy was sent to the correct address. Smith testified that the 2005 policy was mailed to Louisville, and that his records indicated that in April 2006 Defendant's address was changed to 7711 Highway 641, Gilbertsville Kentucky. This is the same address where Dooley testified that he resided, at least some of the time. Dooley also testified that he had a home in Louiseville and that he also resided at the Ken Bar Hotel. In any event, the 2005 policy contained the same exclusions as those at issue in this case, and Dooley specifically requested the renewal of that policy, which resulted in the issuance of the Policy at issue in this case.

Dooley testified that he might have been lax in reading his insurance policies, and that he believes that it is unfair that the Policy allows Plaintiff to collect premiums and never have to indemnify an insured. However, the exclusions at issue in this case are not uncommon. The primary exclusion relied upon by Plaintiff, the assault and battery exclusion, has been characterized by the Sixth Circuit as "sensible, routine, unambiguous, and specific." *Monticello Ins. Co. v. Kentucky River Community Care, Inc.*, No. 98-5372, 1999 WL 236190, at *3 (6th Cir. April 14, 1999) (unpublished). "[I]t is perfectly sensible to exclude coverage for immoral or illegal acts to avoid moral hazard problems." *Id.*

**II. The relevant Policy exclusions**

Under Kentucky law, the interpretation and construction of an insurance contract is a matter

of law for the court. *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992). The language of an insurance policy will be given its plain meaning. *See St. Paul & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). Any ambiguity in an insurance policy will be construed to effectuate the purpose of indemnity. *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 818 S.W.2d 273, 279 (Ky. 1991).

Under the Policy, Plaintiff is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Plaintiff offers four policy exclusions that it argues precludes coverage as to the Estate's law suit seeking recovery for Wilson's bodily injury. Because the exclusions are part of the Policy and the exclusions preclude coverage of the Underlying Action, Plaintiff was under no duty to defend or indemnify Defendant.

Under the assault and battery exclusion, all of the claims of the Underlying Action are excluded from coverage. The assault and battery exclusion states that:

1.This insurance does not apply to "bodily injury" . . . arising out of or resulting from:

(a) any actual, threatened or alleged assault or battery;

(b) . . .

(e) the negligent:
    (i) employment;
    (ii) investigation;
    (iii) supervision
    (iv) training;
    (v) retention;
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. (a), (b) (c) or (d) above;

2. We shall have no duty to defend or indemnify any claim . . . where

(a) any actual or alleged injury arises out of any combination of an assault or batter-related cause and a non-assault or battery related cause.

(b) any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or batter is the initial precipitating event or a substantial cause of injury.

(c) any actual or alleged injury arises out of assault or batter as a concurrent cause of injury, regardless of whether the assault or batter is the proximate cause of injury.

3. For the purposes of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

Count 1 of the Underlying Action alleges that Defendant was negligent in hiring the employees who assaulted Wilson, resulting in her death. Under the plain language of the exclusion, Plaintiff is not required to provide coverage for Defendant's alleged negligent hiring of persons which resulted in the assault and battery of Wilson.

The civil rights claim in the Underlying Action is also excluded under the assault and battery exclusion. The civil rights claim alleges that Defendant is liable for the acts of the employees who killed Wilson because Defendant knew or should have known of the sexual harassment and failed to take corrective action. The complaint then alleges that the violation of the civil rights act caused damages to Wilson. The only factual allegations of sexual harassment are that Defendant's employees took Wilson into a hotel room and raped and killed her. This also falls squarely within the assault and battery exclusion.

Even if the civil rights act claim in Count 2 of the Underlying Action could be construed to be part of some unspecified harassment separate from the assault and battery alleged in Count 1, Plaintiff would still not be under the obligation to provide Defendant with a defense. Under the assault and battery exclusion, the Policy does not provide coverage that arises out of a combination of an assault and battery cause and an non-assault and battery cause of injury. In this case, the only

bodily injuries alleged are from the assault and battery.

Finally, even if the civil rights claim was not excluded by the assault and battery exclusions, coverage would still be excluded by the employment related practices exclusion. Under that exclusion the Policy does not apply to:

> "Bodily injury" to:
> (1) A person arising out of any:
>   (c) employment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

Coverage for the civil rights act claim is precluded to the extent that the Underlying Complaint alleges that Defendant failed to prevent the harassment of Wilson, as such employment related omissions are excluded.

The Underlying Action's third claim is for punitive damages. This claim is excluded under both the assault and battery exclusion. The claim is also excluded under the punitive damages exclusion, which states that "[t]his insurance does not apply to . . . [c]laims or demands for the payment of punitive, exemplary or treble damages." Since all three claims of the Underlying Complaint are excluded by the plain language of the Policy, Plaintiff has no duty to defend or indemnify Defendant.

Defendant requests summary judgment as to Plaintiff's duty to defend, relying on the fact that the assault and battery exclusion is the only relevant exclusion that specifically states that Plaintiff is under no duty to defend when the exclusion applies. The fact that the assault and battery exclusion specifically states that Plaintiff has no duty to defend, and the employment related practices exclusion makes no such statement does not mean that Plaintiff has a duty to defend under the employment related practices exclusion.

The Court has already found that the assault and battery exclusion serves to preclude coverage for all of the Underlying Suit. If any one exclusion applies, there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in any other exclusion. *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 874 (Ky. 2002). In addition, "exclusion clauses do not grant coverage; rather, they subtract from it" *Id.* The fact that only one exclusion states that Plaintiff has no duty to defend does not alter the general rule in Kentucky that an insurer has no duty to defend a claim when it clearly falls within an exclusion. *See Liberty Mutual Ins. Co. v. State Farm Mutual Ins. Co.*, 522 S.W.2d 184, 186 (Ky. 1975); *Kentucky Farm Bureau Mutual Ins. co. v. Cann*, 590 S.W.2d 881, 883 (Ky. App. 1979). Therefore, Defendant's request for summary judgment as to Plaintiff's duty to defend is denied.

### III. Defendant's counterclaim

Defendant argues that its counterclaims should preclude Plaintiff from being entitled to summary judgment. The counterclaim alleges that Plaintiff is liable for breach of contract and misrepresentation. Defendant's breach of contract claim is effectively resolved by the Court's interpretation of the Policy as set out in this opinion.

Defendant's misrepresentation claim alleges that Plaintiff's agent misrepresented to Defendant that by purchasing the Policy, Defendant would be covered for liabilities such as those claimed in the Underlying Action. Plaintiff responds by arguing that it cannot be liable for any of Smith's representations because Smith was Defendant's agent, rather than Plaintiff's agent.

However, "Kentucky statutory and case law have historically provided that anyone who solicited and received applications for insurance on behalf of an insurance company was an agent of the company 'anything in the policy or application to the contrary notwithstanding.'" *Pan-

9

*American Life Ins. Co. v. Roethke*, 30 S.W.3d 128, 131 (Ky. 2000). Kentucky law also recognizes "the need to protect consumers from insurers who, in drafting contracts of adhesion, attempt to exculpate themselves from liability for the mistakes of those who market their product." *Id.*

> Few persons understand insurance who have not made it a special study. The agent who comes to get the insurance is the only person they deal with or know in the transaction. The rule that he represent the company and not the insured in taking the application is just and is generally recognized.

*Motorists Mut. Ins. Co. v. Richmond*, 676 S.W.2d 478, 481 (Ky. Ct. App. 1984).

Based on the current record, the Court cannot find that AIA was not Plaintiff's agent as a matter of law. Under Kentucky law, an "agent" is "an individual or business entity appointed by an insurer to sell or to solicit applications for insurance . . . on its behalf." KRS 304.9-020. In this case, it is possible that AIA sold insurance to Defendant on behalf of Plaintiff, which would fall within the statutory definition of "agent." The mere fact that Smith testified that he considered himself Defendant's agent is by itself insufficient to alter this analysis, as Kentucky courts will ignore such an agreement if the statutory definition of "agent" is satisfied. *Pan-American Life Ins. Co.*, 30 S.W.3d at 131 (insurer cannot avoid agency relationship through contractual arrangement). The fact that Plaintiff had an additional intermediary (Market Finders) between itself and AIA also does nothing to prevent AIA from being Plaintiff's agent, so long as AIA sold or solicited insurance on Plaintiff's behalf.

While Plaintiff argues that AIA was never "appointed" to sell policies on its behalf and was never vested with the implied or apparent authority necessary to bind it, Plaintiff does not discuss what precisely is the business arraignment between Plaintiff' admitted agent, Market Finders, and AIA. Based on the Court's understanding of Kentucky case law, Kentucky courts would be unlikely to accept an insurance company's use of intermediaries if such an arraignment is an "attempt to

exculpate themselves from liability for the mistakes of those who market their product." *Pan-American Life Ins. Co.,* 30 S.W.3d at 131. However, without knowing the agreements between Plaintiff, Market Finders, and AIA, the Court cannot make such a determination.

The Court finds the other elements necessary for agency liability to be insufficiently addressed at this time to allow an informed decision. An insurance company is liable for the acts of its agent when the agent is "acting in their capacity as representative of the insurance company and are acting within the scope of their authority." KRS 304.9-035. At this time, the Court cannot find that AIA acted outside of the scope of his authority, because no party has explained what agreement was in effect between Defendant's agent and AIA at the time AIA sold Plaintiff's insurance policy to Defendant.

However, even assuming that Smith was Plaintiff's agent and that he was acting within the scope of his authority, Defendant's counterclaim still does not preclude summary judgment. Ignoring Smith's testimony that he made no misrepresentations to Dooley, and resolving all ambiguities in favor of Defendant, there is no evidence that Smith made any misrepresentations to Dooley when Defendant purchased the Policy.

When an insurance agent makes an affirmative misrepresentation concerning the coverage of an insurance policy, and the insured relies upon the misrepresentation, an insurance company may be liable for the insured's injury. *Pan-American Life Ins. Co.*, 30 S.W.3d at 133. Based on Dooley's deposition testimony it appears that Dooley was under the impression that a commercial general liability policy could not be subject to any exclusions. Dooley testified that he requested general liability policy from Smith and that Smith replied "you bought general liability." Smith did not represent to Dooley that the Policy's coverage would be unlimited, or that no exclusions could

apply. There is nothing in Dooley's testimony that would lead to the conclusion that Smith made any misrepresentations concerning scope of the Policy's coverage. Instead, he merely replied that Defendant could have a commercial general liability policy, which included standard exclusions. In the absence of any affirmative misrepresentation, the Court finds that Plaintiff may rely on the Policy exclusions to deny Defendant coverage.

For these reasons the Court finds that Plaintiff is under no duty to provide insurance coverage to Defendant, and Plaintiff is entitled to judgment as a matter of law. However, as noted above, Defendant's counterclaim against Plaintiff alleging breach of contract and misrepresentation is still pending before the Court.

## CONCLUSION

For the above reasons, Plaintiff's Renewed Motion for Summary Judgment is GRANTED. Defendant's Motion for Summary Judgment is DENIED.

An appropriate order shall issue.